This is a divorce and child custody case involving in personam jurisdiction.
In July 1992 Priscilla Tyler Crommelin-Monnier (mother) filed a petition for divorce in the Montgomery County Circuit Court. In that petition she alleged that she and Michel Andre Robert Monnier (father) were married on February 27, 1979, in Montgomery, Alabama, and that the parties had resided in Montgomery, Alabama, following their marriage. She requested that the trial court award her custody of the parties' two minor children, child support, alimony, and a property division.
The father filed a motion to dismiss the mother's petition for a divorce and to stay *Page 913 
the proceedings, raising the trial court's lack of in personam jurisdiction over him and the parties' minor children. He also raised the applicability of the International Child Abduction Remedies Act (Hague Convention), 42 U.S.C. § 11601 et seq.[1] The mother filed an amended petition for divorce, alleging that the father was physically abusive of her and the parties' eldest child and again requesting custody of the parties' minor children. Subsequently, the father filed a petition with the trial court for implementation of the Hague Convention.
On February 3, 1993, after written and oral arguments of counsel, the trial court entered an order finding that the father had sufficient contacts with this state to establish in personam jurisdiction; however, that order was subsequently vacated. The case was set for an evidentiary hearing on the merits of the father's petition for implementation of the Hague Convention and on the mother's petition for divorce.
Following an ore tenus proceeding, the trial court entered a "Final Decree of Divorce" wherein it dissolved the bonds of matrimony between the parties; however, it concluded that the Courts of France were more appropriate to entertain jurisdiction regarding custody of the minor children, child support, property division and alimony. Simultaneously with the divorce judgment, the trial court also entered a separate Hague Convention order which found and ordered, in pertinent part, as follows:
 "(1) That the wife is a citizen of the United States of America and a resident of the State of Alabama.
 "(2) That the husband is a citizen of the Nation of France and is a resident of said Nation.
 "(3) That the [minor] children, who were born in the United States to their American mother and French father, hold dual citizenship throughout their minority.
 "(4) That this Court has subject matter jurisdiction over the wife's Petition for Divorce.
 "(5) That this Court does not have in personam jurisdiction over the husband who has not had such contacts with the State of Alabama to be subject to the long-arm statute of jurisdiction in this State.
 "(6) That the parties have lived substantially all of their married life in Paris, France as have their minor children. . . . That the appropriate forum for the resolution of the parties' custody dispute regarding the minor children lies in France. This conclusion is reached by the Court's consideration of the Hague Convention's International Child Abduction Remedies Act, upon the Court's consideration of the alleged maltreatment of [one of the minor children] which occurred in France and due to the election of the parties to live in France throughout their marriage.
 "(7) That the wife should return the [minor] children (and herself should she choose) to France with all deliberate speed for an adjudication of the issue of custody and of related issues. The Court finds that deliberate speed should not exceed sixty (60) days from the date of this Order.
 "(8) That this Court retains jurisdiction for the purposes of implementing and enforcing any provisions or rulings properly entered pursuant to the Hague Convention's International Child Abduction Remedies Act."
Both the father and the mother filed post-judgment motions, which were denied; however, the trial court did grant the mother's motion for a stay of the trial court's Hague Convention order and the judgment of divorce pending appeal. Only the mother appeals from the trial court's judgment of divorce and Hague Convention order.
The mother raises many issues on appeal; however, we find the dispositive issue to be whether the trial court erred in finding that it lacked in personam jurisdiction over the father.
 IN PERSONAM JURISDICTION
The requirements for personal jurisdiction over a nonresident defendant are set *Page 914 
forth in Rule 4.2(a)(2), Alabama Rules of Civil Procedure:
 "Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
". . . .
 "(H) living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising from alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state; or
 "(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action." (Emphasis added.)
"Whether a court has personal jurisdiction over a nonresident defendant must be determined on a case by case basis."Steel Processors v. Sue's Pumps, Inc., 622 So.2d 910, 911 (Ala. 1993). In making that determination, our supreme court has set out a two-part analysis of the circumstances of each case:
 " '1) the determination of whether it is foreseeable to that nonresident defendant that he will be sued in this state; and
 "2) the determination of the degree of contact that the nonresident defendant has with this state.' "
Steel Processors, Inc., 622 So.2d at 912 (quoting Keelean v.Central Bank of the South, 544 So.2d 153, 156-57 (Ala. 1989));see also Millette v. O'Neal Steel, Inc., 613 So.2d 1225 (Ala. 1992).
"Thus, we must determine if [the father] had certain minimum contacts with this state so that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,' by examining the facts in this case."Ex parte Brislawn, 443 So.2d 32, 33 (Ala. 1983).
The record[2] reflects that the mother is a professional ballet dancer and that before and after the marriage, she worked in many different countries all over the world. Before the marriage, she maintained a residence in Birmingham, Alabama. The father was a steward with Air France Airlines and flew international flights. The mother testified that at the time of their marriage in 1979, the father helped her move from Birmingham to her present place of residence in Elmore County, Alabama. She further testified that immediately after their marriage in 1979, she and the father lived together in a house next to her parents' home in Wetumpka, Alabama. Approximately 10 days after their marriage, the parties moved to the father's native country, France. The mother, however, continued to maintain her residence[3] in Alabama. The father is a French citizen and resides in France.
In 1980 and 1987 with the express approval of the father, the mother came back to Alabama for the births of their children, a son and a daughter who were both born in Montgomery, Alabama. The mother testified that the father thought it was a good idea for her to come to Alabama to give birth and that the father came to Alabama and stayed for a period of time after each birth. The record reflects that in 1980 the father came for the birth of the parties' son and lived with the mother in Alabama for approximately 28 days. In 1987 the father came to Alabama after the birth of the parties' daughter and stayed with the mother for a period of 8 days. The record indicates that this was the last time the father spent any time in Alabama. During the stay in Alabama for the daughter's birth, the parties' son attended private school in Montgomery. Testimony reflected that the mother and children spent approximately three to four months each year at the mother's Alabama residence and that, in addition to his extended stays, the father visited periodically until 1987. The children traveled under United *Page 915 
States passports which list their residence in Alabama, and they have United States social security numbers. Both children were baptized in Alabama. The mother testified that it was not until after the commencement of the divorce proceeding and after the husband filed the Hague Convention petition that efforts were made to have the children recognized as French citizens.
The mother cites Brislawn, supra, and Wells v. Wells,533 So.2d 606 (Ala.Civ.App. 1987), in support of her argument that the father had sufficient contacts with this state to invoke in personam jurisdiction. In Brislawn, the parties were married in Georgia, and after their wedding night they spent 10 days with the wife's parents in Alabama. Subsequently, the parties lived in Germany until they separated and the wife returned to Alabama where a child was born. Our supreme court held that the facts of that case established the necessary minimum contacts for the Alabama court to have in personam jurisdiction over Mr. Brislawn. In Wells, the wife lived in Alabama with the children during the parties' separation and before their divorce in Nevada; the husband was responsible for certain private school expenses for the children in Mobile; and the husband visited the state in order to see his minor children. It was determined that the activity on the part of the husband was sufficient to provide Alabama courts with personal jurisdiction.
The mother contends that the facts in this case are even more compelling than the facts in Brislawn and Wells to support a finding of in personam jurisdiction. We agree. In applying our supreme court's two-part analysis in determining the father's degree of contacts with this state and determining whether it was foreseeable that the father would be sued in this state, we are compelled to consider, in addition to the above facts, the fact that when the father sent the mother to Alabama for the birth of each of their minor children and later joined the mother and children in Alabama for extended periods, it was reasonably foreseeable that he could expect to be sued in Alabama if the wife's medical and hospital bills were not paid. The parties' son attended a private school in Alabama during the stay for the birth of the parties' daughter. He was tutored in French and French math during that stay. It was foreseeable that the father could be sued in Alabama if the minor son's tuition was not paid or the tutor was not paid. One of the facts considered in Wells was the husband's responsibility for certain educational expenses for the minor children in Mobile, Alabama.
In Brislawn, the parties were married in Georgia, and the husband and wife only stayed in Alabama with the wife's parents for 10 days immediately after the marriage. The parties separated in Germany, and the wife returned to Alabama where their child was born. In this case, the parties were married in Alabama; they lived in a house next to the mother's parents for approximately 10 days after the marriage; the mother maintained her residence in Alabama; the mother and the father returned to Alabama for the birth of their first child when the father stayed in Alabama with the mother for 28 days; and, in addition to the father's periodic visits to Alabama, he stayed in Alabama with the mother for eight more days after the birth of their second child. In Wells, the husband only visited his children in Alabama, and in Brislawn, the husband never came back to Alabama after his 10-day stay immediately after the marriage. The contacts with the state in this case are many times greater than the contacts in Brislawn or Wells.
We find that the father's activities and contacts with the State of Alabama regarding the marriage and the children were such that the maintenance of this divorce and custody action does not offend traditional notions of fair play and substantial justice and that "under the circumstances, it is fair and reasonable to require the [father] to come to this state to defend [this] action." Rule 4.2(a)(2)(I), A.R.Civ.P.;Brislawn, supra. Our supreme court has recognized that where general jurisdiction may not exist, a trial court may still exercise specific jurisdiction if the nonresident defendant has sufficient contacts with Alabama in relation to the cause of action. Ex parte J.R.W., [Ms. *Page 916 
1921580, March 18, 1994] ___ So.2d ___ (Ala. 1994).
We hold that the father had sufficient contacts with the State of Alabama regarding this action and that the trial court improperly held that it lacked in personam jurisdiction over the father. Consequently, the trial court erred by failing to resolve the issues of custody, child support, alimony, and all other matters incident to this divorce proceeding.
 HAGUE CONVENTION
With the Alabama courts having in personam jurisdiction over the father as well as the minor children in this divorce and custody case, we hold that the father's Hague Convention petition was due to be denied. We note, however, for future[4] references, that the Hague Convention, 42 U.S.C. § 11604(b) states: "No court exercising jurisdiction of an action brought under section 11603(b) of this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless theapplicable requirements of State law are satisfied." (Emphasis added.) When a trial court is faced with the proposed removal of minor children to a foreign country, the appointment of a guardian ad litem for each child for the protection of their best interests will be required. See Ex parte Jacobs,636 So.2d 410 (Ala. 1994). No guardian ad litems were appointed for the minor children in this proceeding.
Based on the foregoing, the Hague Convention order and the judgment of divorce are reversed, and this cause is remanded to the trial court for further proceedings.
The husband's request for an attorney's fee on appeal is denied.
REVERSED AND REMANDED.
THIGPEN and YATES, JJ., concur.
[1] The International Child Abduction Remedies Act is the codification of the Hague Convention on the Civil Aspects of International Child Abduction of October 25, 1980.
[2] The father did not testify at the trial of this case.
[3] The trial court found that the mother was a resident of the State of Alabama, and that finding is not challenged on appeal. The mother has maintained his Alabama driver's license, her voter's registration in Elmore County, and her United States passport lists Elmore County as her place of residence.
[4] There have been no prior Alabama appellate opinions regarding the Hague Convention in a domestic relations case.